UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEBORAH MORSE, Plaintiff, | CIVIL ACTION NO. 3:10-CV-01126 (JCH) |
| v. | |
| PRATT & WHITNEY Defendants. | JANUARY 23, 2013 |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 37)**

**I.     INTRODUCTION**

Plaintiff, Deborah Morse ("Morse"), brings this action against Pratt & Whitney ("Pratt"), alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), section 46a-58 of the Connecticut General Statutes, and the Connecticut Equal Pay Act, Conn. Gen. Stat. § 31-75 et seq. Specifically, Morse claims she was underpaid and underpromoted in relation to similarly situated male employees and was subject to retaliation by Pratt because of her complaints regarding such treatment.

**II.    STATEMENT OF FACTS**

Morse started working for Pratt in the Tooling Support Services ("TSS") group in 1999. Plaintiff's Local Rule Statement 56(a)(2) ¶ 1, 10. At least since 2007, she held the status of Labor Grade 40. Id. at ¶ 9; p. 7. According to Morse, she performed tasks and duties assigned to her by her supervisor, Mr. Bianchi, which were beyond her job description. Id. at 5. These tasks included negotiating or authorizing customer credit, setting priority for manufacturing supplies, calling suppliers and establishing delivery

1

priority, creating new business development, making customer visits, and attending trade shows and conferences as well as being accountable for specific sales and EBIT targets, supplier management, coordination of purchase order issuance, customer price and warranty negotiations, and customer credit negotiations for the Pratt Canada customer base. Id. at p. 5-6. According to Morse, these responsibilities were identical to the duties of Grade L5 employees in the TSS division, although she held a non-exempt Grade 40 position.[1] Id. at ¶ 6; p. 6-7.

Morse claims that, sometime in or before 2007, she was given the position and duties of Regional Manager for Pratt Canada, and that she was listed as such on the TSS brochure. Id. However, she states that, while her non-exempt Grade 40 position "theoretically allowed her to be compensated for overtime" and her duties required her to work an additional 15 hours per week overtime, Mr. Bianchi did not approve overtime pay. Id. at 7. Morse claims she informed Joe Muldoon, Director of Maintenance Data, Services and Equipment, in 2007, that she could not perform her duties within a 40 hour work week, and that she either needed to be promoted and receive a higher grade of pay or be compensated for overtime. Id. Morse also claims she complained to Mr. Bianchi and Mr. Lemire, the TSS Regional Manager, that she was undercompensated because she was female, and that both told her that "'girls' who had husbands with jobs did not need to make as much money as men since men were the primary earners in

---

[1] Pratt asserts in its 56(a)(1) Statement that Morse started working at Pratt as a Labor Grade 38, earning a salary of $33,408, and that she received consistent increases in her salary—from 3 to 8 percent—over the next 11 years. L.R. 56(a)(1) ¶ 4-6. Morse denies these assertions because the document proffered by Pratt to support these statements, namely an employee history form, was "wholly unattested." L.R. 56(a)(2) ¶ 4-6. Because the document was not "authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)," the court does not consider this document in determining whether summary judgment is appropriate. National Union Fire Ins. Co. of Pittsburgh v. Miller, 1989 WL 39677, at *2 (S.D.N.Y. Apr. 14, 1989) (unpublished opinion).

2

the family." Id. at 8. In addition, Morse claims Mr. Bianchi denied her the opportunity to receive continuing education even though he approved such education for male employees. Id. According to Morse, Mr. Bianchi said he would not approve education compensation for a female employee because she would waste classes on basket weaving, knitting or cooking. Id. at 8-9.

Morse asserts that, in March 2008, she filed an internal complaint claiming gender discrimination in the form of "lack of respect," "job function," "pay," "promotability" and "travel." Id. at ¶ 11. She resubmitted her March 7, 2008 complaint in May 2008, "as follow-up to a meeting and verbal complaint to HR." L.R. 56(a)(2) ¶ 11; see also Def.'s Mem. in Supp. Mot. for Summ. J. at 3 n.3 (calling it a clarification).

Sometime in 2008, Pratt's Compensation group performed a comprehensive study of employee salaries. Id. at ¶ 7. In April 2008, Pratt issued market pay adjustments to 224 salaried employees, including Morse. Id. As a result, Pratt increased Morse's salary by slightly over 20 percent, to $56,038.58. Id. at ¶ 8. Morse received her salary adjustment at the same time as the other employees received salary adjustments. Id. at ¶ 14.

On June 4, 2008, Joseph Muldoon and Cynthia Howard, Manager of Human Resources, met with Morse to discuss Pratt's response to her internal complaint. Id. at ¶ 15. Mr. Muldoon and Ms. Howard explained that Pratt investigated the five areas in her complaint and found she had been treated fairly. Id. at ¶ 16. Ms. Howard explained that her 2008 salary increase was not based on Morse's complaint, but rather on a company-wide compensation review to determine what adjustments were appropriate for all employees. Id. at ¶ 17. Separate from her internal complaint, Morse disclosed to

Pratt that her supervisor, Mr. Bianchi, was her uncle by marriage. Id. at ¶ 19.

Pratt claims that Morse was happy about her raise and declined to pursue her internal complaint any further. L.R. 56(a)(1) ¶ 18. Morse denies this claim and instead asserts that she wrote Ms. Howard to request that her compensation be applied retroactively for at least the two years prior. L.R. 56(a)(2) ¶ 18. In addition, Pratt recommended that Morse no longer work directly under her uncle and either move to a similar position within the company or stay in her current position and report to a different supervisor. Id. at ¶ 20. As a result, Morse began reporting to a new supervisor, Gary Hile, to whom she was happy reporting. Id. at ¶ 22-23. According to Morse, she also received an email from Mr. Muldoon in June 2008, informing her that she was not responsible for certain job duties, particularly those that separated the grade L5 employees from the lower level clerical employees. See Pl. Aff. at ¶23; Pl. Mem. in Opp'n. Mot. for Summ. J., Ex. 4. In addition, Morse claims that, after having attended a trade show in September 2007, and having been told she was supposed to attend a trade show in 2008, that promise "was taken back" at some point after she filed her complaint, and they sent another employee instead. Pl. Dep. at 112. In August 2008, Pratt fired Mr. Bianchi. L.R. 56(a)(1) at ¶ 24. Morse then began reporting to John Lemire, the TSS Regional Manager, with whom Morse got along well. Id. at ¶ 25.

Pratt claims that in May 2009, Morse resigned and moved to Tennessee with her husband, as she had long planned to do when her husband retired. L.R. 56(a)(1) ¶ 27. Morse's husband retired from Pratt in May 2008, after accepting a voluntary separation package. L.R. 56(a)(2) ¶ 28. Morse claims that she did not "resign" In May 2009, id. at ¶ 1, 27, although she submitted a letter of resignation. See Morse Dep. at 13. Instead,

she claims she continued working from home after she left Pratt on May 29, 2009. Id. According to Morse, she informed Mr. Bianchi and Mr. Muldoon sometime before her husband retired in May 2008 that he was ill and that, if he was still alive when he was eligible to retire, she wanted to move to Tennessee with him and continue to work for Pratt from home. Id. at 10. According to Morse, Mr. Bianchi and Mr. Muldoon assured her she could work from home. Id. However, Morse claims that Mr. Bianchi withdrew her request to work from home in July 2008 after she refused to withdraw the complaint she filed with the Connecticut Commission on Human Rights and Opportunities. Id. at 11. According to Morse, Mr. Lemire reassured her before she left Pratt in May 2009, that he would arrange for her to work part-time from home. Id. However, Morse claims that, after moving to Tennessee and working for Pratt for six weeks, she was never paid and, therefore, she ceased working. Id.

### III.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to

summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV.   DISCUSSION

### A. Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 states, "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a). Morse alleges that Pratt discriminated against her with respect to her compensation as well as by failing to promote her. The court considers both claims in turn.

#### 1. Unequal pay for equal work

"A claim of unequal pay for equal work under Title VII . . . is generally analyzed

6

under the same standards used in an EPA [Equal Pay Act] claim." Tomka v. Seiler Corp., 66 F.3d 1295, 1312 (2d Cir. 1995). "In addition to the requirements that are generally the same as those under the EPA, 'a Title VII plaintiff must also produce evidence of discriminatory animus in order to make out a prima facie case of intentional sex-based salary discrimination.'" Belfi v. Prendergast, 191 F.3d 129, 139 (2d Cir. 1999) (citing Tomka, 66 F.3d at 1313). Therefore, to make out a prima facie case for unequal pay for equal work under Title VII, a plaintiff must show "(1) she was a member of a protected class, (2) she was qualified for the job in question, (3) she was paid less than men for the same work, and (4) the employer's adverse employment decision occurred under circumstances that raise an inference of discrimination." Belfi, 191 F.3d at 140.

Pratt appears to concede that Morse meets the first two elements of her prima facie case.[2] See Def.'s Mem. in Supp. Mot. for Summ. J. at 11 (contesting only prongs three and four of Morse's prima facie case). However, Pratt argues that Morse was not underpaid for the years preceding her 2008 pay increase, and that it did not pay similarly situated men and women differently. Id.

Pratt relies on the salaries of its employees after the 2008 salary adjustment to argue that Morse was not paid substantially less than similarly situated men. See Def.'s Mem. in Supp. Mot. for Summ. J. at 13. However, because Morse is alleging she was

---

[2] Pratt states that to establish a prima facie case based on underpayment, Morse must show "(1) she was within a protected group; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Def.'s Mem. in Supp. Mot. for Summ. J. at 11. Pratt argues that Morse fails to meet prongs three and four of her prima facie case. Although Pratt fails to present the exact standard for unequal pay claims under Title VII, the court construes its argument that Morse did not suffer an adverse employment action as one that Morse was not underpaid in comparison to similarly situated male employees under prongs three and four of the analysis.

discriminated prior to the 2008 adjustment, the relevant salaries are those prior to April 2008. Of the two other TSS employees at the same pay grade as Morse—Labor Grade 40—and title—"Lead Tech, Eng/Mthds.Stds"—one was female and one was male.[3] L.R. 56(a)(2) ¶ 30. Prior to the adjustment, Morse and the female employee received salaries of $46,451 and $48,456, respectively. Id. The male employee received $60,000.[4] Id. Therefore, there is evidence that would allow a reasonable jury to conclude that Morse was paid less than men for the same work.[5] See Heap v. County of Schenectady, 214 F.Supp.2d 263, 271 (N.D.N.Y. 2002) (stating that "similarly

---

[3] At oral argument, Pratt claimed that individuals of the same pay grade and title are not necessarily "similarly-situated." However, in arguing in its Motion for Summary Judgment that Morse could not show that she was paid less than similarly situated men, Pratt referred specifically to the employees within TSS who were Labor Grade L7 and lower—which included employees at Labor Grade 40—and argued that, among that group of employees, Morse was not paid "substantially" less. See Def.'s Mem. in Supp. Mot. Summ. J. at 13. The court does not see how Pratt can now argue that employees within that group of employees are not "similarly-situated" to Morse. Further, Morse submitted evidence suggesting that employees of the same pay grade perform similar duties. See Morse Aff. at ¶ 23 (explaining the duties that separated grade L5 employees from lower level clerical employees). Making all inferences in favor of the plaintiff, the court finds that Morse has met her prima facie burden to establish that the male employee at Labor Grade 40 was "similarly situated" to her.

[4] Pratt claims that Morse has not presented admissible evidence that similarly situated males were paid more than her. See Def.'s Reply at 2 n.2 (stating that Morse's claim is based on a hearsay statement from a coworker who allegedly told her about other people's salaries). However, Pratt presented in its Local Rule 56(a)(1) statement, which Morse admitted was true, the percentage increases and 2008 salaries of TSS employees. L.R. 56(a)(2) at ¶ 30.

[5] Morse appears to also claim that she was paid less than male employees who performed the same tasks as her, but were given a higher pay grade. See L.R. 56(a)(2) at 6. In determining whether employees are similarly situated, "jobs which are 'merely comparable' are insufficient to satisfy a plaintiff's prima facie burden." Heap, 214 F.Supp.2d at 271. Morse must "show that the two positions are 'substantially equal' in skill, effort, and responsibility." Fayson v. Kaleida Health, Inc., 2002 WL 31194559, at *9 (W.D.N.Y. Sept. 18, 2002). Because there is evidence to allow a reasonable jury to conclude that a male employee with the same pay grade as Morse received greater compensation, the court will not consider whether the additional male employees to whom Morse refers were similarly situated for purposes of establishing a prima facie case. See Hernandez v. Kellwood Co., 2003 WL 22309326, at *9 (S.D.N.Y. Oct. 8, 2003) (after dismissing unequal pay claim as time barred against first similarly situated male employee, the court held the plaintiff made out a prima facie case by showing she received less pay than one other similarly situated male employee); see also Detrick v. H&E Machinery, Inc., 934 F.Supp. 63, 69 (W.D.N.Y. 1996) (although plaintiff failed to show the two positions were substantially similar, the court found the plaintiff met her burden under the third prong by showing she was paid less than her male successor); Simpson v. Merchants & Planters Bank, 441 F.3d 572, 577-79 (8th Cir. 2006) (finding a reasonable jury could have found that female plaintiff was paid less than one other male for equal work).

8